**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BANILLA GAMES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>STOP SHOP GROCERY INC.,<br><br>Defendant. | Civil Action No.: 2:26-cv-6263<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff, Banilla Games, Inc. ("**Banilla**" or "**Plaintiff**"), by counsel, states the following as its Complaint against Defendant, Stop Shop Grocery Inc. ("**Stop Shop**" or "**Defendant**").

**NATURE OF THE CASE**

1. Over the last decade, Banilla has firmly established itself as a prominent leader in the skill-based gaming and amusement industry. Banilla is widely recognized for its innovation and commitment to quality, attributes that have earned the company a strong reputation among distributors, route operators, players, and industry participants alike. Banilla markets its flagship suite of video gaming systems under the "FUSION" brand ("**FUSION Games**"). Banilla has invested substantial time, effort, and resources in developing and protecting its brand and intellectual property, including the FUSION Games, and is committed to safeguarding these valuable assets.

2. This is a civil action arising from Defendant's willful and deliberate infringement of Banilla's intellectual property rights, including, but not limited to, its exclusive rights in and to the FUSION brand of video gaming systems. Defendant has engaged in the unauthorized purchase, use, distribution, sale, placement, vending, marketing, and/or public display of counterfeit versions

of Banilla's products and commercial exploitation of the following trademarks owned by Banilla (collectively, the "**Banilla Marks**"):[1]

a. the federally registered BANILLA GAMES trademark and BANILLA GAMES stylized trademark (the "**BANILLA GAMES Marks**");

b. the federally registered OFFSHORE ANGLER trademark (the "**OFFSHORE ANGLER Mark**"); and

c. the federally registered TERROR TAVERN trademark (the "**TERROR TAVERN Mark**").

Defendant's conduct violates Banilla's exclusive rights in the Banilla Marks.

3. Banilla asserts claims for trademark counterfeiting and infringement under Section 32(1) of the Lanham Act,[2] 15 U.S.C. § 1114(1); unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and related claims of unfair competition and trademark infringement under the statutory and common law of the Commonwealth of Pennsylvania.

4. The Banilla Marks, which are inherently distinctive and have acquired substantial secondary meaning in the marketplace, signify to consumers the high quality and source of origin of Banilla's products in the various nudge, skill, redemption, and amusement game markets, and are valid, protectable, and enforceable under federal and state law.

---

[1] Banilla is also the owner of, among others, the following valid and subsisting United States Trademark Registrations on the Principal Register of the United States Patent and Trademark Office: "CRUMBLE CAVE," Registration No. 8,157,384, which registration issued on March 3, 2026; "BOURBON STREET DICE," Registration No. 8,165,445, which registration issued on March 10, 2026; "VEGAS MAGIC," Registration No. 8,157,385, which registration issued on March 3, 2026; "PLUNDERIN' PIRATES," Registration No. 8,095,915, which registration issued on January 6, 2026; "GORGON TREASURES OF GREECE," Registration No. 8,174,555, which registration issued on March 17, 2026.

[2] Hereinafter, the term "Lanham Act" refers to 15 U.S.C. §§ 1051 *et seq*.

5. Banilla brings claims for copyright infringement pursuant to the United States Copyright Act of 1976, as amended (the "**Copyright Act**"), 17 U.S.C. § 101 *et seq*. These claims arise from Defendant's unauthorized purchase, offer for sale, distribution, marketing, public display, and commercial exploitation of counterfeit FUSION Games, which reproduce, copy, and are substantially similar to—and therefore, infringe—Banilla's copyrighted works. Banilla seeks all remedies available under the Copyright Act, including, but not limited to, preliminary and permanent injunctive relief, recovery of Banilla's actual damages and Defendant's profits attributable to the infringing conduct or statutory damages, and such other monetary and equitable relief as the Court deems just and proper.

6. Banilla's trademarks and copyrights embody the substantial goodwill and reputation that Banilla has developed over many years through continuous use in commerce, and they belong exclusively to Banilla.

## THE PARTIES

7. Banilla is a corporation duly organized and existing under the laws of the State of North Carolina with its principal place of business in Greenville, Pitt County, North Carolina. Banilla creates, designs, develops, and manufactures software, artwork, and audiovisual effects for various electronic games in various markets, including, but not limited to, the skill-based redemption market.

8. Defendant, Stop Shop, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its registered address at 2050 Dickinson Street, Philadelphia, Pennsylvania 19146. At all relevant times, Stop Shop has been engaged in, among other things, the unauthorized use, reproduction, sale, distribution, and/or commercial exploitation of counterfeit products purporting to be genuine Banilla products. These counterfeit products infringe

upon Banilla's intellectual property rights, including its federally registered trademarks and registered copyrights, and Stop Shop has profited and continues to profit from the unauthorized use and commercial exploitation of Banilla's protected intellectual property, as more fully described herein.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over the claims in this action that arise under the Lanham Act and Copyright Act pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121.

10. This Court has supplemental jurisdiction over Banilla's related state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy and arise from a common nucleus of operative facts.

11. This Court has personal jurisdiction over Defendant because Defendant is a domestic Pennsylvania limited liability company with its registered address in this district, has operated, distributed, or placed infringing products within this Commonwealth and this district and has otherwise established contacts within this Commonwealth and this district sufficient to permit the exercise of general and specific jurisdiction.

12. Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Banilla's claims occurred in this district, and under 28 U.S.C. § 1400(a) because Defendant is located in this district.

## FACTUAL ALLEGATIONS

### I. BANILLA'S BUSINESS AND INTELLECTUAL PROPERTY

13. Since 2013, Banilla has invested millions of dollars in the development of its high-quality and reliable electronic games of skill. Multiple teams of dedicated in-house personnel,

acting within the scope of their employment, develop, from scratch, all design and software components of the FUSION Games. These components include, but are not limited to, the games' source code, object code, two-dimensional and other artwork, static images, and other visual and audiovisual effects that contribute to the distinctive and enjoyable user experience of the FUSION Games. All the artwork, static images, and audiovisual effects in the FUSION Games are original—i.e., created by the in-house game design teams—and none of the artwork, static images, and audiovisual effects are copied from any third-party source in the creation of these products.

14. Banilla manufactures and distributes a variety of skill-game and amusement devices, including the FUSION-branded devices, which are currently in their sixth iteration.

15. Banilla serves as the exclusive distributor of the FUSION Games. Through Banilla's distribution efforts, the FUSION Games, including the Copyrighted Works (as defined below), are made available to customers, who, in turn, place the FUSION Games in their respective places of business.

16. To obtain the FUSION Games, including the Copyrighted Works (as defined below), an individual or business must purchase the FUSION Games directly from Banilla or from an authorized reseller to whom Banilla has sold legitimate FUSION Games. No other channel of distribution is authorized by Banilla.

17. Banilla has invested substantial time, effort, and resources in developing, marketing, and distributing the FUSION Games to its customers and providing exemplary customer service to those customers who purchase legitimate copies of the FUSION Games.

18. Banilla's FUSION Games are highly regarded by Banilla's customers (e.g., the operators who purchase the games) and end users (e.g., the individuals who play the games), all

of whom have come to associate the FUSION Games and the Banilla Marks with high-quality products and superior customer service from Banilla.

19. Banilla continues to invest heavily in the development and protection of its intellectual property and has consistently and vigorously protected and enforced those rights.

20. In furtherance of its brand-building efforts, Banilla has used the BANILLA GAMES Marks in commerce throughout the United States continuously since at least February 6, 2014. The BANILLA GAMES Marks have been used in connection with the manufacture, distribution, offering for sale, sale, marketing, advertising, and promotion of products in the board, nudge, skill, redemption, and amusement game markets.

21. Banilla is the owner of the intellectual property rights in the software for the FUSION Games, which consists of a series of game suites. These intellectual property rights include multiple federal copyright registrations issued by the United States Copyright Office for the computer files and associated audiovisual effects used in the FUSION line of video games, including, but not limited to, the following:

- Number PA0002206908, obtained on October 11, 2019, for Banilla's FUSION video game (the "**Fusion Copyrighted Work**").
- Number PA0002218349, obtained on October 11, 2019, for Banilla's FUSION 2 video game (the "**Fusion 2 Copyrighted Work**").
- Number PA0002218347, obtained on October 11, 2019, for Banilla's FUSION 3 video game (the "**Fusion 3 Copyrighted Work**").
- Number PA0002293309, obtained on May 24, 2021, for Banilla's FUSION 4 video game (the "**Fusion 4 Copyrighted Work**").

- Number PAu004088597, obtained on May 24, 2021, for Banilla's FUSION 5 video game, which was supplemented with Number PA0002599140, obtained on August 14, 2026 (the "**Fusion 5 Copyrighted Work**").[3]
- Number PA0002559762, obtained on September 22, 2025, for Banilla's FUSION 6 video game (the "**Fusion 6 Copyrighted Work**").
- Number PA0002368424, obtained on July 19, 2022, for Banilla's FUSION Link video game (the "**Fusion Link Copyrighted Work**").

22. Banilla also owns federal copyright registrations for the two-dimensional artwork used in its individual game titles, including, as relevant here, the game title "Terror Tavern," Number PA0002551216, obtained on June 13, 2025 (the "**Terror Tavern Copyrighted Work**"),[4] the game title "Offshore Angler," Number PA0002537346, obtained on March 27, 2025 (the "**Offshore Angler Copyrighted Work**"),[5] and the game title "Topshot Golf," Number PA0002551916, obtained on June 26, 2025 (the "**Topshot Golf Copyrighted Work**").[6] Hereinafter, the above copyright works will be referred to collectively as the "**Copyrighted Works**."[7]

---

[3] Attached hereto as **Exhibit 1**.
[4] Attached hereto as **Exhibit 2**.
[5] Attached hereto as **Exhibit 3**.
[6] Attached hereto as **Exhibit 4**.
[7] Banilla also owns federal copyright registrations for the two-dimensional artwork used in its individual game titles including, but not limited to: the game title "Crumble Cave," Number VA0002173744, obtained on October 11, 2019 (the "**Crumble Cave Copyrighted Work**"), the game title "Bourbon Street Dice," Number VA0002184888, obtained on October 11, 2019 (the "**Bourbon Street Dice Copyrighted Work**"), the game title "Ticket to Ride," Number VA0002184964, obtained on October 11, 2019 (the "**Ticket to Ride Copyrighted Work**"), and the game title "Vegas Magic," Number VA0002184972, obtained on October 11, 2019 (the "**Vegas Magic Copyrighted Work**"); the game title "Plunderin' Pirates," Number PA0002533777, obtained on March 19, 2025 (the "**Plunderin' Pirates Copyrighted Work**"); and the game title "Gorgon: Treasures of Greece," Number PA0002551204, obtained on June 13, 2025 (the "**Gorgon**

23. In addition, Banilla has continuously used the trademark "FUSION" (the "**FUSION Mark**") in commerce throughout the United States since at least as early as February 2017, in connection with the creation, distribution, offering for sale, sale, marketing, and promotion of its FUSION Games, including the Copyrighted Works at issue in this action. Attached hereto as **Exhibit 5** are representative samples of materials evidencing Banilla's use of the FUSION Mark in connection with the FUSION Games.

24. Since their introduction, the FUSION Games have become among the most popular and widely recognized skill games available in the United States, enjoying widespread recognition and use by players, locations, route operators, and resellers. *See, e.g.*, https://banillagames.com/product-category/platforms/skill-games/fusion-series/; *see also* https://banillagames.com/product-category/platforms/skill-games/fusion-link/. As a result of Banilla's longstanding and continuous use of the FUSION Mark, and the consistently high quality of its goods and services offered thereunder, the FUSION Mark has acquired substantial secondary meaning and become widely known throughout the United States, including in Pennsylvania. The FUSION Mark is closely and exclusively identified with Banilla and represents substantial and valuable goodwill belonging to Banilla.

25. By virtue of its widespread, continuous, and exclusive use of the FUSION Mark to identify its products in the board, nudge, skill, redemption, and amusement game markets, and to identify Banilla as the single source of origin of those products, Banilla owns valid, protectable, and subsisting statutory and common law rights in and to the FUSION Mark.

---

**Copyrighted Work**"). Hereinafter, the copyright registrations for these game titles will be referred to collectively as the "**Copyrighted Games**."

26. Banilla is the owner of the following valid and subsisting United States Trademark Registrations recorded on the Principal Register of the United States Patent and Trademark Office ("**USPTO**"):

a. "BANILLA GAMES," Registration No. 7,187,483, which registration issued on October 10, 2023, as shown in **Exhibit 6**.

b. "BANILLA GAMES" (stylized w/ bananas)," Registration No. 7,187,484, which registration issued on October 10, 2023, as shown in **Exhibit 7**.

c. "TERROR TAVERN," Registration No. 7,994,942, which registration issued on October 21, 2025 as shown in **Exhibit 8**.

d. "OFFSHORE ANGLER," Registration No. 8,174,554, which registration issued on March 17, 2026 as shown in **Exhibit 9**.

27. Banilla has used the BANILLA GAMES word mark and BANILLA GAMES (stylized w/ bananas) design mark in interstate commerce in the United States, including Pennsylvania, continuously since at least as early as February 6, 2014, in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of products for the board, nudge, skill, redemption, and amusement game markets.

28. Banilla has used the OFFSHORE ANGLER Mark in commerce throughout the United States, including Pennsylvania, continuously since at least as early as May 18, 2021, in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of products for the board, nudge, skill, redemption, and amusement game markets.

29. Banilla has used the TERROR TAVERN Mark in commerce throughout the United States, including Pennsylvania, continuously since at least as early as May 18, 2021, in connection

with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of products for the board, nudge, skill, redemption, and amusement game markets.

30. As a result of the widespread, continuous, and exclusive use of the Banilla Marks in interstate commerce to identify its products in the board, nudge, skill, redemption, and amusement game markets, and to identify and distinguish Banilla as the source of those products, Banilla owns valid and subsisting federal statutory and common law trademark rights in and to the Banilla Marks.

31. Banilla has made significant investments of time and resources in promoting and marketing its goods and services provided under the Banilla Marks. As a direct result of Banilla's continuous and exclusive use and promotion of the Banilla Marks in connection with its goods and services, Banilla has developed and now owns substantial and valuable goodwill symbolized by and associated with the Banilla Marks.

32. As a direct result of these efforts, the goodwill and recognition that Banilla has established in the Banilla Marks have enabled Banilla to achieve substantial sales of its products in the board, nudge, skill, redemption, and amusement game markets under the Banilla Marks throughout the United States.

33. The Banilla Marks are inherently distinctive and/or have acquired strong secondary meaning among both the consuming public and the relevant trade, including participants in the skill-based redemption game market.

34. As a result of its significant investment in the promotion and marketing of the FUSION Games, Banilla has become recognized as a global leader in the electronic gaming industry. As a global leader, Banilla diligently protects its business and products through comprehensive intellectual property enforcement measures, including the registration of

copyrightable works, registration of trademarks and service marks, protection of trade secrets, and other measures designed to safeguard its intellectual property rights. As a result of these efforts, Banilla has developed and owns substantial and valuable goodwill associated with the Banilla Marks.

## II. DEFENDANT'S COUNTERFEITING AND INFRINGING ACTIVITIES

### *Copyright Infringement*

35. Banilla is the exclusive distributor of the FUSION Games. Banilla sells FUSION Games to end users, who, in turn, use them in their places of business.

36. On or about May 21, 2026, Banilla learned through its own due diligence that Defendant owned, publicly displayed, sold or offered for sale at least one (1) counterfeit, pirated, or hacked version of the Fusion 5 Copyrighted Work and allowed or intended to allow such counterfeit and unauthorized games to be used by its customers and purchasers (i.e., end users).

37. After learning of Defendant's infringing activity—namely, the trafficking in counterfeit games—Banilla exercised reasonable diligence to investigate and verify that Defendant's misconduct was occurring and continuing.

38. On June 1, 2026, after learning of Defendant's actions and confirming the continuing nature of Defendant's infringing activity, Banilla sent to Defendant a cease and desist letter (the "**Cease and Desist Letter**"). The Cease and Desist Letter demanded, among other things, that Defendant immediately cease using counterfeit Banilla products and turn over all counterfeit Banilla products in its possession, custody, or control.

39. Despite actual receipt of the Cease and Desist Letter and full awareness of the demands contained therein, Defendant has willfully ignored Banilla's demands and, upon

information and belief, continues to offer for sale and/or use counterfeit products that infringe the Copyrighted Works and, likely, other intellectual property belonging to Banilla.

40. Upon information and belief, Defendant purchased, distributed, offered for sale, placed, vended, marketed, publicly displayed, and/or otherwise commercially exploited all of the unauthorized, pirated, and/or hacked reproductions of the Copyrighted Works on the secondary market (the "**Illicit Games**"). Neither the cabinets in which the Illicit Games are housed, if any, nor the Illicit Games therein are created, sold, authorized, or licensed by Banilla.

41. Upon further information and belief, Defendant has either purchased, sold, distributed and/or vended additional Illicit Games, or has the means, motive, and capability to obtain, provide, and use additional Illicit Games.

42. The hacked, pirated, and/or counterfeit Illicit Games are sold for significantly less than genuine products. A genuine Fusion 5 game board, for example, costs $4,995.00 and a full game board and cabinet costs approximately $10,000.00. Upon information and belief, Defendant acquired the Illicit Games at a fraction of this cost, enabling Defendant to undercut Banilla's authorized pricing structure and further its unlawful scheme.

43. This scheme allows Defendant to undercut Banilla's market share, divert Banilla's profits, and increase Defendant's own profits at Banilla's expense. By purchasing Illicit Games at a substantially lower price, Defendant can maximize its profits by receiving a larger portion of gross revenue and ultimately displace Banilla's legitimate machines from locations that would otherwise host them.

44. Defendant's Illicit Games are substantially similar to the Copyrighted Works in that they present substantially similar game play and substantially similar artwork. However, the Illicit Games perform at slower speeds than the Copyrighted Works, and the Illicit Games display

dimmer, lower-quality artwork than that found in the Copyrighted Works. Additionally, the game board that runs the Illicit Games is designed in a completely different manner from Banilla's genuine game boards.

45. Banilla owns all rights, title, and interest in and to the copyrights covering the audiovisual effects that tie together the artwork used in the Copyrighted Works, which effects depict a series of related images that, when shown in a sequence, impart an impression of motion and the expression fixed in motion.

46. In addition, Banilla owns all rights, title, and interest in and to the copyrights covering the individual game titles "Terror Taven," "Offshore Angler," and "Topshot Golf" that are incorporated into the Fusion 5 Copyrighted Work.

47. The Copyrighted Works are wholly original works of authorship. Banilla is the sole and exclusive owner of all rights, title, and interest in the Copyrighted Works, including all exclusive rights associated therewith, such as the right to reproduce the software in copies and to distribute those copies to the public. Additionally, 17 U.S.C. § 106(5) grants Banilla, as the copyright holder of the individual images comprising these "motion picture[s] or other audiovisual work[s]," the exclusive right to publicly display the Copyrighted Works.

48. Without Banilla's authorization, consent, or knowledge, and without any compensation to Banilla, Defendant has published and publicly displayed unauthorized, unlicensed, and counterfeit reproductions of the Copyrighted Works. Specifically, Defendant has published and publicly displayed unauthorized, unlicensed, and counterfeit versions of the Fusion 5 Copyrighted Work, and unauthorized, unlicensed, and counterfeit versions of the individual games titled: the Terror Tavern Copyrighted Work, the Offshore Angler Copyrighted Work, and the Topshot Golf Copyrighted Work.

*Trademark Infringement*

49. Banilla also owns the Banilla Marks, each of which is registered with the United States Patent and Trademark Office, and which appear at the start-up of each FUSION Game. The Banilla Marks are inherently distinctive and/or have acquired significant secondary meaning, entitling the Banilla Marks to the broadest scope of protection under federal trademark law.

50. Without authorization from Banilla, Defendant has used, likely among others, the Banilla Marks, or counterfeit and unauthorized imitations thereof that are confusingly similar to consumers and end users (the "**Infringing Marks**"), in commerce within the United States, in connection with the marketing, distribution, and operation of the Illicit Games.

51. Defendant's Illicit Games are marketed as, among other things, skill games, and are sold and distributed in the same skill game markets in which Banilla markets and distributes its products. Indeed, the target market for both Banilla's products and services and Defendant's Illicit Games and services is identical, namely, distributors and route operators, who make such games available to end users who play the games.

52. Defendant's infringing acts, as alleged herein, have caused and are continuing to cause, confusion, mistake, and deception among the relevant consuming public as to the source of origin of Defendant's game boards and have and are continuing to deceive the relevant consuming public into believing, mistakenly, that Defendant's game boards originate from, are associated or affiliated with, or otherwise authorized by Banilla.

53. Defendant's acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to Banilla and to its valuable reputation and goodwill with the consuming public for which Banilla has no adequate remedy at law.

54. Defendant’s Illicit Games are confusingly similar to authentic FUSION Games sold and distributed by Banilla, differing primarily in the speed of game play, the quality of the displayed artwork, and the internal design of the game board, differences that are not readily apparent to the average consumer or end user and that therefore increase the likelihood of confusion.

55. Each time an Illicit Game is placed, publicly displayed, or put into operation, and each time such a machine is started, Defendant employs the Infringing Marks.

56. Defendant’s infringing actions, as alleged herein, have caused, or are likely to cause, confusion, mistake, and deception among the relevant consuming public (e.g., consumers and end users) as to the source, sponsorship, or affiliation of the Illicit Games, falsely suggesting an association with or endorsement by Banilla and deceiving the relevant consuming public into believing, mistakenly, that the Illicit Games originate from, are associated or affiliated with, or otherwise authorized by Banilla. The prominent uses of FUSION Games are made with the intent to trade on the goodwill associated with the Banilla Marks.

57. Defendant’s use of the Infringing Marks in connection with the Illicit Games creates the false impression that Defendant’s goods and services originate from Banilla, or that Banilla is connected with, associated with, or sponsors Defendant’s goods and services, so as to deceive customers and to cause confusion, or mistake, as to the affiliation, connection, or association of Defendant’s goods and services with Banilla, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

58. Defendant’s acts alleged above are further causing, and, unless enjoined, will continue to cause, immediate and irreparable injury to Banilla’s business, reputation, and goodwill, for which Banilla has no adequate remedy at law.

*Damages from Copyright and Trademark Infringement*

59. As a result of Defendant's actions, Banilla has been damaged, and continues to be damaged, by the unauthorized publication and public display of counterfeit versions of the Copyrighted Works, including, but not limited to, the Fusion 5 Copyrighted Work, the Terror Tavern Copyrighted Work, the Offshore Angler Copyrighted Work, and the Topshot Golf Copyrighted Work. Furthermore, Banilla has been damaged, and continues to be damaged by Defendant's unauthorized use of the Infringing Marks.

60. Defendant has never accounted to or otherwise paid Banilla for its improper, illegal, and unauthorized use of the Copyrighted Works or the Banilla Marks, or counterfeit reproductions thereof.

61. Defendant's acts are causing, and, unless enjoined by this Court, will continue to cause, immediate and irreparable harm and ongoing damages to Banilla, for which Banilla has no adequate remedy at law.

62. Upon information and belief, Defendant's infringement has been and continues to be willful, intentional, and with reckless disregard for Banilla's rights, entitling Banilla to enhanced damages.

63. Upon information and belief, Defendant is familiar with the cost of legitimate Banilla products and readily recognizes the Banilla brand and the distinguishing characteristics of legitimate Banilla products, including the Copyrighted Works and the Banilla Marks at issue in this action. Accordingly, Defendant is fully aware that the Copyrighted Works and the Banilla Marks are successful games and titles connected to a successful brand in the relevant marketplace.

64. Indeed, the FUSION line of games is a well-known and commercially successful product line, popular among both operators, locations, and players. Exploiting this demand,

Defendant deliberately selected its counterfeit offerings to capitalize on the established consumer demand for Banilla's FUSION products. In other words, Defendant intentionally targeted Banilla's most recognizable and highest demand products to maximize its own sales, placements, and profits at Banilla's expense.

65. Upon information and belief, Defendant sourced its counterfeit game boards, which contain pirated copies of Banilla's copyrighted software, from a Chinese manufacturer.

66. The reason Defendant chose to source its computer boards containing infringing software from a Chinese manufacturer is simple: Defendant sought computer boards containing the most popular games at the lowest possible cost.

67. Upon information and belief, Defendant knows not only the cost of a legitimate Banilla product but is also aware of the distinguishing characteristics of a legitimate Banilla product.

68. Despite this knowledge, Defendant has willfully and deliberately obtained, upon information and belief, a significant quantity of counterfeit games—Illicit Games—that infringe on the Banilla Marks, Copyrighted Works, and Banilla's goodwill.

69. Defendant's conduct has caused, and unless enjoined, will continue to cause, Banilla to suffer lost profits and irreparable harm to its goodwill.

70. Consumers are likely to associate Defendant's Illicit Games with Banilla because, *inter alia*, Defendant's Illicit Games replicate in every material respect the look, feel, and user experience of the FUSION Games.

71. Defendant has engaged in unfair methods of competition and unfair trade practices. Specifically, Defendant is intentionally "passing off" or "palming off" its Illicit Games as if they were authentic, or otherwise authorized, Banilla products in order to cause confusion among

consumers as to the source, sponsorship, or approval of such goods, while capitalizing on Banilla's stellar and established reputation for quality products and service.

72. Defendant's conduct is causing, and, unless enjoined by this Court, will continue to cause, immediate and irreparable harm and damage to Banilla, for which Banilla has no adequate remedy at law.

73. Upon information and belief, Defendant's conduct is willful and undertaken with the deliberate intent to trade on Banilla's goodwill, to cause confusion and deception in the marketplace, and to divert sales from Banilla's authentic FUSION Games to Defendant.

**COUNT I**
**Copyright Infringement Pursuant to 17 U.S.C. §§ 106, 501**

74. Banilla re-states, re-alleges, and incorporates the foregoing paragraphs by reference as if fully stated herein.

75. The Copyrighted Works and the incorporated Copyrighted Games are motion picture/audiovisual effects containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*

76. Banilla is the exclusive owner of all exclusive rights under copyright in the Copyrighted Works. Banilla owns valid copyright registrations, issued by the United States Copyright Office, for the Copyrighted Works, specifically the Fusion 5 Copyrighted Work, the Terror Tavern Copyrighted Work, the Offshore Angler Copyrighted Work, and the Topshot Golf Copyrighted Work.

77. Multiple teams of dedicated in-house personnel, acting within the scope of their employment, created the Copyrighted Works. None of these employees have any contractual rights to ownership of the Copyrighted Works and, as such, the Copyrighted Works constitute works made for hire.

78. Banilla is the owner of all rights, title, and interest in and to the asserted copyrights underlying the Copyrighted Works.

79. The Copyrighted Works were registered within five (5) years of the first publication of the Copyrighted Works.

80. By making the Illicit Games available for use by end users, Defendant has publicly displayed and published pirated, hacked, and/or counterfeit copies of, likely among others, the Fusion 5 Copyrighted Work, the Terror Tavern Copyrighted Work, the Offshore Angler Copyrighted Work, and the Topshot Golf Copyrighted Work, and has done so without Banilla's permission.

81. As a direct and proximate result of Defendant's infringement of Banilla's Fusion 5 Copyrighted Work, the Terror Tavern Copyrighted Work, the Offshore Angler Copyrighted Work, and the Topshot Golf Copyrighted Work, and pursuant to 17 U.S.C. § 503(a), this Court "may order the impounding . . . (A) of all copies or phonorecords claimed to have been made or used in violation of the exclusive right of the copyright owner; . . . (C) of records documenting the manufacture, sale, or receipt of things involved in any such violation, provided that any records seized under this subparagraph shall be taken into the custody of the court."

82. As a direct and proximate result of Defendant's infringement of Banilla's copyrights, Banilla is entitled to statutory damages, pursuant to 17 U.S.C. § 504(c)(1), in an amount of up to $30,000.00, or up to $150,000.00 for a willful infringement, per copyright violation, with respect to Defendant's infringing use of the Fusion 5 Copyrighted Work, the Terror Tavern Copyrighted Work, the Offshore Angler Copyrighted Work, and the Topshot Golf Copyrighted Work, or such other amount as may be appropriate under 17 U.S.C. § 504(c).

Alternatively, at Banilla's election, pursuant to 17 U.S.C. § 504(b), Banilla shall be entitled to its actual damages, including Defendant's profits from the infringements, as will be proven at trial.

83. Banilla is entitled to an award of attorneys' fees and costs pursuant to 17 U.S.C. § 505 for Defendant's willful infringement.

84. In all events, Defendant's acts are causing, and, unless restrained, will continue to cause, damage and immediate irreparable harm to Banilla, for which Banilla has no adequate remedy at law. Banilla is thus entitled to impoundment of the Illicit Games, preliminary injunction, and permanent injunction.

**COUNT II**
**Federal Trademark Infringement**
**Pursuant to 15 U.S.C. § 1114**

85. Banilla re-states, re-alleges, and incorporates the foregoing paragraphs by reference as if fully stated herein.

86. Banilla owns the U.S. trademark registrations for the Banilla Marks listed in **Exhibits 6-9**.

87. Defendant's unauthorized use in commerce of the Banilla Marks to promote the sale of goods differing materially from authorized goods sold under the Banilla Marks (e.g., the Illicit Games) as alleged herein is likely to cause confusion, deception, and mistake as to the origin, source, sponsorship, or affiliation of Defendant's goods by creating the false and misleading impression that those goods are sold, authorized, endorsed, or sponsored by Banilla, or that Defendant is in some way affiliated with or sponsored by Banilla.

88. Defendant's use of the Banilla Marks violates 15 U.S.C. § 1114, and Defendant's activities have caused and, unless enjoined by this Court, will continue to cause, a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Banilla's

goodwill and reputation as symbolized by the Banilla Marks, for which Banilla has no adequate remedy at law.

89. Upon information and belief, Defendant has committed the foregoing acts of infringement with full knowledge of Banilla's prior rights in the Banilla Marks and with the willful intent to cause confusion and trade on Banilla's goodwill.

90. Defendant has caused, and is likely to continue causing, substantial injury to the public and to Banilla, and Banilla is entitled to injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees and costs of this action under 15 U.S.C. §§ 1114, 1116, and 1117.

**COUNT III**
**Unfair Methods of Competition Pursuant to 15 U.S.C. § 1125(a)**

91. Banilla re-states, re-alleges, and incorporates the foregoing paragraphs by reference as if fully stated herein.

92. Banilla owns the U.S. trademark registrations for the Banilla Marks listed in **Exhibits 6-9**.

93. Banilla is the exclusive distributor of the FUSION Games, which games are sold by Banilla as either software boards or in freestanding gaming cabinets.

94. Defendant's unauthorized use in commerce of the Banilla Marks to promote the sale of goods differing materially from authorized goods sold under the Banilla Marks (e.g., the Illicit Games) as alleged herein is likely to cause confusion, deception, and mistake as to the origin, source, sponsorship, or affiliation of Defendant's goods by creating the false and misleading impression that those goods are sold, authorized, endorsed, or sponsored by Banilla, or that Defendant is in some way affiliated with or sponsored by Banilla.

95. Defendant's unauthorized use in commerce of the Banilla Marks as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

96. Upon information and belief, Defendant has committed the foregoing acts with full knowledge of Banilla's prior rights in the Banilla Marks and with the willful intent to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Banilla.

97. Defendant's conduct as alleged herein constitutes unfair competition in violation of 15 U.S.C. § 1125(a).

98. Defendant's conduct as alleged herein is causing immediate and irreparable harm and injury to Banilla, and to its goodwill and reputation, and will continue to both damage Banilla and confuse the public unless enjoined. Banilla has no adequate remedy at law. Banilla is thus entitled to a temporary restraining order, preliminary injunction, and permanent injunction.

99. Banilla is entitled to, among other injunctive relief, and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees and costs, under 15 U.S.C. §§ 1116 and 1117, as well as pre- and post-judgment interest.

**COUNT IV**
**False Designation of Origin Pursuant to 15 U.S.C. § 1125(a)**

100. Banilla re-states, re-alleges, and incorporates the foregoing paragraphs by reference as if fully stated herein.

101. Banilla owns the U.S. trademark registrations for the Banilla Marks listed in **Exhibits 6-9**.

102. Banilla is the exclusive distributor of the FUSION Games, which games are sold by Banilla either as software boards or in freestanding gaming cabinets.

103. Defendant's unauthorized use in commerce of the Banilla Marks and/or confusingly similar variations thereof to promote the sale of goods differing materially from authorized goods sold under the Banilla Marks (e.g., the Illicit Games) as alleged herein is likely to cause confusion, deception, and mistake as to the origin, source, sponsorship, or affiliation of Defendant's goods by creating the false and misleading impression that those goods are sold, authorized, endorsed, or sponsored by Banilla, or that Defendant is in some way affiliated with or sponsored by Banilla.

104. Defendant's unauthorized use in commerce of the Banilla Marks and/or confusingly similar variations thereof as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

105. Upon information and belief, Defendant has committed the foregoing acts with full knowledge of Banilla's prior rights in the Banilla Marks and with the willful intent to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Banilla.

106. Defendant's conduct as alleged herein constitutes false designation of origin in violation of 15 U.S.C. § 1125(a).

107. Defendant's conduct as alleged herein is causing immediate and irreparable harm and injury to Banilla, and to its goodwill and reputation, and will continue to both damage Banilla and confuse the public unless enjoined. Banilla has no adequate remedy at law. Banilla is thus entitled to a temporary restraining order, preliminary injunction, and permanent injunction.

108. Banilla is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees and costs, under 15 U.S.C. §§ 1116 and 1117, as well as pre- and post-judgment interest.

**COUNT V**
**Common Law Unfair Competition**

109. Banilla re-states, re-alleges, and incorporates the foregoing paragraphs by reference as if fully stated herein.

110. This claim is for passing off, unfair competition, and deceptive trade practices in violation of the common law of Pennsylvania.

111. Defendant's actions in passing off its Illicit Games as those authorized, created, licensed, sold, and/or distributed by Banilla are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendant's Illicit Games, thereby causing harm to the reputation and goodwill of Banilla.

112. Defendant has profited and been unjustly enriched by revenue from the Illicit Games that Defendant would not otherwise have made but for its unlawful conduct.

113. Banilla has been damaged by Defendant's passing off and unfair or deceptive acts or practices.

114. As a result of Defendant's passing off and unfair trade practices, Banilla is entitled to an award of its damages, as well as injunctive and equitable relief.

**COUNT VI**
**Common Law Trademark Infringement**

115. Banilla re-states, re-alleges, and incorporates the foregoing paragraphs by reference as if fully stated herein.

116. This claim is for common law trademark infringement against Defendant based on its sale, offering for sale, use, placement, marketing, and/or public display of the Illicit Games

bearing Banilla's FUSION Mark. Banilla is the owner of all common law rights in and to Banilla's FUSION Mark.

117. Defendant, without authority, has used and is continuing to use Banilla's FUSION Mark, and counterfeit imitations thereof, in connection with the sale, offering for sale, use, placement, marketing, and/or public display of the Illicit Games, thereby inducing Defendant's customers and/or clients, and others, to believe, contrary to fact, that the Illicit Games placed/sold by Defendant emanate or originate from Banilla, or that Banilla has approved, permitted, licensed, or otherwise associated itself with Defendant and its Illicit Games. Defendant's acts have damaged, impaired, and diluted the goodwill symbolized by Banilla's FUSION Mark, to Banilla's immediate and irreparable damage.

118. Actual and potential consumers, upon encountering Defendant's Illicit Games, are likely to be confused about the source of origin of the Illicit Games and will likely mistakenly believe that Defendant's Illicit Games originate with, or are sold, licensed, approved, sponsored by, or otherwise affiliated with Banilla.

119. Defendant's unauthorized use of the Banilla Marks or counterfeit imitations thereof, which are either identical or confusingly similar to the Banilla Marks, in connection with the advertising and sale of FUSION Games or the Illicit Games as alleged herein, have caused and is likely to continue to cause confusion, mistake, and deceive consumers as to the source, sponsorship, or affiliation of the Illicit Games, and is likely to cause consumers to believe, contrary to fact, that the Illicit Games are sold, authorized, endorsed, or sponsored by Banilla, or that Defendant is in some way affiliated with or sponsored by Banilla, all in violation of Banilla's rights under the common law of Pennsylvania.

120. Defendant's acts in displaying, offering for sale or use, selling, and/or distributing counterfeit versions of Banilla's FUSION Games were committed with full knowledge of Banilla's prior rights in the Banilla Marks, and done willfully, deliberately, and in bad faith.

121. Defendant's conduct alleged herein constitutes trademark infringement and unfair competition under the common law of Pennsylvania.

122. Defendant has used the Banilla Marks on its Illicit Games that were not manufactured by or authorized by Banilla, and, therefore, Defendant has deliberately attempted to deceive and mislead consumers.

123. Defendant, through its continued and unauthorized use of the Banilla Marks, is unfairly benefiting from and misappropriating Banilla's goodwill and reputation, resulting in serious, substantial, and irreparable injury to Banilla and the public.

WHEREFORE, for the reasons stated above, Plaintiff, Banilla Games, Inc., prays to the Court as follows:

1. For judgment that Defendant, Stop Shop Grocery Inc.:

   (a) Has violated the Copyright Act, 17 U.S.C. §§ 101, *et seq.*;

   (b) Has violated Section 32(1) of the Lanham Act, 15 U.S.C. § 1114, and Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

   (c) Has engaged in unfair competition in violation of the common law of Pennsylvania; and

   (d) Has engaged in trademark infringement in violation of the common law of Pennsylvania.

2. That an injunction be issued enjoining and restraining Defendant, Stop Shop Grocery Inc., and each of its officers, agents, employees, attorneys, and all those in active concert or participation with it from:

(a) Defendant's continued use, publication, and display of the BANILLA GAMES Mark, the BANILLA GAMES (stylized w/bananas) Mark, the TERROR TAVERN Mark, and the OFFSHORE ANGLER Mark;

(b) Defendant's continued use, publication, and display of the Copyrighted Works, namely the Fusion 5 Copyrighted Work, the Terror Tavern Copyrighted Work, the Offshore Angler Copyrighted Work, and the Topshot Golf Copyrighted Work;

(c) Defendant's continued deceptive practices, including marketing or passing off the Illicit Games in interstate commerce; and

(d) Defendant's use of Banilla's trademarks and intellectual property, including the Illicit Games.

3. For the entry of an order directing Defendant, Stop Shop Grocery Inc., and all other persons, firms, or corporations in active concert or privity or in participation with Defendant, to deliver up to Banilla all products, advertisements, promotional materials, packaging, and other items in their possession or under their control bearing the Copyrighted Works, or any simulation, reproduction, counterfeit, copy, or colorable imitation thereof, pursuant to 15 U.S.C. § 1118 and 17 U.S.C. § 503(b).

4. For an assessment of actual damages, plus the amount of Defendant's profits attributable to the infringement(s), or in the alternative, an assessment of statutory damages, as authorized by 17 U.S.C. § 504(c) in an amount not less than $600,000.00 for Defendant's willful

infringement of the Copyrighted Works, namely the Fusion 5 Copyrighted Work, the Terror Tavern Copyrighted Work, the Offshore Angler Copyrighted Work, and the Topshot Golf Copyrighted Work.

5. For an assessment of: actual damages, plus the amount of Defendant's profits attributable to the infringement(s), or in the alternative, an assessment of statutory damages, as authorized by 15 U.S.C. § 1117(c) in an amount not less than $8,000,000.00 for Defendant's willful infringement of the BANILLA GAMES Mark, the BANILLA GAMES (stylized w/bananas) Mark, the TERROR TAVERN Mark, and the OFFSHORE ANGLER Mark.

6. For an assessment of: (a) damages suffered by Banilla, pursuant to 15 U.S.C. § 1117(a), and (b) an award of Banilla's costs and attorneys' fees to the full extent provided for by 15 U.S.C. § 1117 and 17 U.S.C. § 505.

7. For a judgment against Defendant in an amount to be determined at trial, but not less than $8,600,000.00 plus interest and costs as allowed by law.

8. For damages awarded to Banilla as allowed by law for Defendant's willful infringements.

9. For costs and reasonable attorneys' fees, as allowed by law.

10. For such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMAND**

Banilla respectfully demands a trial by jury on all claims and issues so triable.

This 25th day of August 2026

/s/ *Bradley P. Lehman*
Bradley P. Lehman
PA Bar No. 319653
WHITEFORD, TAYLOR & PRESTON LLP
600 North King Street, Suite 600
Wilmington, Delaware 19801
Telephone: (302) 295-5674
Facsimile: (302) 295-5678
E-Mail: blehman@whitefordlaw.com